El Crédito y Ahorro Ponceño, Recurrente, *v.* El Registrador de San Juan, Recurrido.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección Primera, denegatoria de inscripción de una escritura de hipoteca.

No. 506.—Resuelto en marzo 6, 1922.

Hipoteca—Distribución de la Responsabilidad Hipotecaria—Hipoteca Subsidiaria—Pacto de no Cancelar Parcialmente—Especialidad de la Hipoteca.—Después de haber distribuído la responsabilidad de que debía responder cada una de las varias fincas hipotecadas para garantizar cierta deuda pactaron las partes que las fincas hipotecadas responderían todas y cada una del total de las responsabilidades del deudor para con el acreedor, y que no se cancelaría parcialmente el gravamen impuesto sobre las varias fincas sino cuando el total de la deuda y sus intereses hubieren sido pagados. *Se resolvió:* que el contrato no es inscribible porque tal pacto adicional es contrario al artículo 119 de la Ley Hipotecaria, al 164 de su Reglamento y a la doctrina establecida por esta Corte Suprema en *Ortiz* v. *Registrador,* 16 D. P. R. 676.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. F. Parra Capó.*

El registrador recurrido compareció por escrito.

El Juez Presidente Sr. del Toro, emitió la opinión del tribunal.

Luis Antonio Ortiz y su esposa doña Blanca Guarch comparecieron ante notario y otorgaron una escritura de hipoteca sobre varias fincas de su propiedad a favor del ''Crédito y Ahorro Ponceño,'' para garantizar cierta deuda de ''Lanza, Rucabado y Cía.'' De acuerdo con la ley se especificó la cantidad de que debía responder cada finca, pero se pactó además lo que sigue:

''I. Que las fincas hipotecadas responderán todas y cada una del total de las responsabilidades de 'Lanza, Rucabado & Company' para con el 'Crédito y Ahorro Ponceño, Sociedad Incorporada' según aquí se han descrito.

''II. Que no se cancelará parcialmente el gravamen establecido sobre estas propiedades, sino cuando el total de la deuda y sus intereses hubieren sido pagados.''

Presentado el documento para su inscripción en el Registro de la Propiedad de San Juan, el registrador se negó a ello porque si bien se determinaba la responsabilidad particular de cada finca, posteriormente se pactaba lo que dejamos transcrito, pacto que era, a su juicio, contrario a los artículos 119, 120 y 121 de la Ley Hipotecaria y 99 de su Reglamento y a la doctrina sentada por esta Corte Suprema en el caso de *Ortiz* v. *Registrador,* 16 D. P. R. 676.

Hemos estudiado cuidadosamente los hechos y la ley y la jurisprudencia aplicable y estamos enteramente conformes con el registrador.

El artículo 119 de la Ley Hipotecaria vigente en Puerto Rico prescribe que ''cuando se hipotequen varias fincas a la vez por un sólo crédito, se determinará la cantidad o parte de gravamen de que cada una deba responder'' y el artículo 164 de su Reglamento dispone que los registradores *no inscribirán* ninguna hipoteca sin que se cumpla el anterior precepto de ley.    En el caso de Ortiz, *supra,* decidió esta corte que el mandato del legislador aún siendo como era acordado en beneficio del deudor, no podía ser renunciado por éste, a los fines, por lo menos, del registro.

Se alega que en este caso se cumplió con lo exigido por la ley.    Es cierto, pero también lo es que acto seguido se anuló tal cumplimiento.

En el tomo 3, página 262 de sus comentarios, se expresa Galindo, así:

''Acostumbra algún establecimiento de crédito a exigir, para la seguridad de los préstamos que hace, dos hipotecas: una, distribuyendo el capital de que ha de responder entre todas las fincas hipotecadas; y otra subsidiaria, sobre diversas fincas que responden de toda la cantidad para el caso de quiebra en alguna de las fincas sujetas a la hipoteca principal.

''Pacto es éste que consideramos contrario al espíritu de la ley, y hasta a la recta interpretación de sus artículos.    Al declarar requisito indispensable, cuya omisión impide que se inscriba una escritura de crédito hipotecario, el que cada finca responda sólo de una can-

tidad determinada, tuvo por objeto que la carga real no se exten-diese más que a la cifra que importase el préstamo, e impedir las inmoderadas pretensiones de los acreedores que no contentos con garantías firmes, exigen otras innecesarias, perjudicando en gran manera el crédito territorial. Permitiéndose una hipoteca subsidia-ria, resultan todos estos males, responden las fincas a una cantidad doble de préstamo, puesto que garantizan todo el capital distribuído entre ellas y el mismo capital en junto con la hipoteca subsidiaria; y así como no sería inscribible la hipoteca subsidiaria sobre las mis-mas fincas que se hipotecan principalmente, de modo que cada una respondiese de la parte señalada y además de todo el capital por si alguna de las fincas resultaba deficiente para el cobro de la cantidad de que respondía, así es ininscribible la garantía suprerogatoria de una finca que responda de cantidades que están aseguradas, según permite la ley.''

Y Morell, citando finalmente la exposición de motivos de la propia ley, dice:

''La determinación de la hipoteca en el sentido general de esa palabra, equivale a la especialidad de la misma. Exige esa deter-minación que sea perfectamente definido y fácil de identificar el ob-jeto sobre que recae la hipoteca, y que se marque la extensión del derecho que sobre ese objeto se impone. Es el mismo principio exigido en general para la inscripción de los derechos reales, con aplicación especial a la hipoteca.

  *   *   *   *   *   *   *

''Pero cuando se hipotecan varias fincas en seguridad de un sólo crédito, presentábase a los legisladores un grave problema que resol-ver, ¿quedaba bien determinada la hipoteca, expresando en la ins-cripción de cada finca, que ésta, en unión con otras tantas, garan-tizaba el importe total del crédito principal, y en su caso las res-ponsabilidades asignadas por razón de intereses, costas, etc.? Aún quedando así determinada la hipoteca, ¿era esa forma de determi-nación conveniente para el crédito territorial y suficiente con rela-ción a terceros?

''La exposición de motivos de la ley primitiva, estudiando este aspecto de la cuestión, decía lo siguiente:

'' 'Según el derecho antiguo, cuando se hipotecan varias fincas a la vez por un crédito, todas quedan sujetas a una carga real por el importe total de lo debido, y sobre todas ellas se extiende por igual

el derecho hipotecario del acreedor.    Resulta de aquí que el deudor ve frecuentemente minorado su crédito territorial mucho más de lo que en realidad han desmerecido su riqueza y la garantía que aún ofrecen los bienes inmuebles que posee, rebajadas las obligaciones y cargas a que se hallan afectos; resulta también que así vienen a ser protegidas indirectamente por la ley las inmoderadas exigencias de los prestamistas que no contentos con garantías firmes y de éxito seguro, multiplican sin utilidad suya, y con perjuicio del crédito territorial, las dificultades del préstamo sobre hipotecas.    A estos inconvenientes ha atendido el proyecto proponiendo que cuando sean varias las fincas que por un sólo crédito se hipotequen, haya de determinarse la cantidad o parte de gravamen de que cada una tiene que responder.    De este modo, la carga real no se extiende a todo el valor de la finca, sino solamente a una cifra que puede ser muy inferior a su valor verdadero, quedando en libertad y en posibilidad el dueño de poder levantar sobre la misma finca otro crédito hipotecario, que no perjudicará al antiguo en lo que alcance al valor de la cantidad hipotecada, pero que tendrá preferencia sobre otros créditos, y aún sobre el mismo primero, por la parte a que no estén afectos los bienes inmuebles, o los intereses vencidos de las dos anualidades anteriores y la parte vencida también de la anualidad corriente.''    4 Morell.    Legislación Hipotecaria, 11 y siguientes.

Véase también la resolución de 5 de abril de 1907 de la Dirección General de los Registros de España, en la que se declara que aunque los otorgantes distribuyan la responsabilidad entre las fincas, si después hacen constar que responderán además de todos los gastos y desembolsos que implique el cumplimiento de lo convenido, aunque sean superiores a la cantidad fijada, faltan al precepto del artículo 119, constituyéndose realmente la hipoteca sin la necesaria determinación o limitación de responsabilidad.

Debe confirmarse la nota recurrida.

*Confirmada la nota recurrida.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.