RAFAEL FUSTER FUSTER ET AL., recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Número: 1397    Resuelto: 31 de mayo de 1963

*Santiago C. Soler Favale,* abogado de los recurrentes; el Registrador recurrido compareció por escrito.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La corporación Mueblerías Fuster, Inc., suscribió un pagaré a favor de don Enrique Calimano McCormick, o a su orden, por la suma de $50,000, habiéndose hecho constar que esta obligación sería garantizada con hipoteca sobre dos fincas urbanas.

El 22 de agosto de 1961 los esposos don Rafael Fuster y doña Lupercia González y Mueblerías Fuster, Inc., otorgaron la escritura Núm. 19 ante el notario don Santiago C. Soler Favale en virtud de la cual constituyeron unilateralmente una hipoteca sobre dos fincas urbanas propiedad de los esposos Fuster González para garantizar el pagaré endosable antes mencionado.

Presentada dicha escritura en el Registro de la Propiedad de Guayama el señor Registrador procedió a inscribirla pero consignando un defecto subsanable y denegando la inscripción en cuanto a cierta cláusula hipotecaria, mediante la siguiente nota:

"Inscrito el documento que precede, con vista de otro complementario a los folios 207 vto. y 151 vto. de los tomos 104 y 109 de Guayama, fincas núms. 239$^4$ y 1560$^2$ ins. 17a. y 14a., respectivamente; con el defecto subsanable de no estar aceptada en forma legal la escritura objeto de inscripción a los efectos de la distribución de la responsabilidad hipotecaria entre las fincas gravadas por el acreedor hipotecario señor Enrique R. Calimano McCormick; Denegándose la inscripción o consignación de la

cláusula Segunda hipotecaria en cuanto hace extensiva el gravamen hipotecario a los terrenos que por agrupación se agreguen a los hipotecados por ser contrario a las disposiciones de los artículos 110 y 111 de la vigente Ley Hipotecaria; tomándose en su lugar anotación preventiva por el término legal de 120 días a favor del acreedor hipotecario. Además de la hipoteca constituida por este documento la finca letra A está afecta, etc."

En el derecho hipotecario es bien conocido el principio de que las hipotecas voluntarias pueden constituirse válidamente no sólo por convenio de las partes, sino por la exclusiva voluntad del dueño de los bienes sobre que las mismas se constituyen sin necesidad de que conste en el mismo documento la aceptación de las personas a favor de quienes directa o indirectamente se constituye la carga. *Santiago* v. *Registrador de Guayama*, 25 D.P.R. 855 (1917); *Pérez Blanco* v. *Registrador*, 37 D.P.R. 632 (1928). Conforme dispone el Art. 119 de la Ley Hipotecaria (30 L.P.R.A. 215) cuando se hipotequen varias fincas a la vez por un solo crédito, se determinará la cantidad o parte de gravamen de que cada una deba responder. Por su parte el Reglamento Hipotecario, en su Art. 164 (30 L.P.R.A. sec. 1085) prohibe a los registradores inscribir ninguna hipoteca sobre bienes diferentes afectos a una misma obligación, sin que por convenio entre las partes, o por mandato judicial en su caso, se determine previamente la cantidad de que cada finca deba responder. Cuando en la escritura de hipoteca no hay distribución de responsabilidad entre las varias fincas hipotecadas para responder de una sola obligación, dicha escritura no es inscribible en el Registro de la Propiedad. *J. M. Portela & Co.* v. *Registrador*, 41 D.P.R. 281 (1930); pero cuando la distribución de la responsabilidad se hace sólo por los deudores hipotecarios, que como únicas partes comparecen en la escritura de hipoteca, la omisión del acreedor de aceptar formalmente la hipoteca constituye un defecto subsanable del título. *Morales* v. *Registrador*, 37 D.P.R. 860 (1928); *Sanabria* v. *Registrador*, 37 D.P.R. 873 (1928). Este requisito de la distribución de responsa-

bilidad, establecido para beneficio del deudor, es irrenunciable, *Galiñanes Hnos. Inc.* v. *Registrador*, 65 D.P.R. 576 (1946); *Crédito y Ahorro Ponceño* v. *Registrador*, 30 D.P.R. 137 (1922). El principio de la distribución de responsabilidad es igualmente aplicable a las hipotecas constituidas para garantizar pagarés endosables o al portador. *Gómez* v. *Registrador*, 35 D.P.R. 60 (1926). En esta última clase de hipotecas voluntarias; ¿exige la ley que los acreedores hipotecarios, acepten la distribución de la responsabilidad de las fincas hipotecadas?

■ En las hipotecas para garantizar títulos al portador no se puede individualizar al acreedor hipotecario y en la inscripción se expresa que la hipoteca queda constituida a favor de los tenedores de las obligaciones a que la escritura se refiere. Arts. 153 de la Ley Hipotecaria (30 L.P.R.A. sec. 266) y 184 de su Reglamento (30 L.P.R.A. sec. 1118). La imposibilidad de que en estos casos el acreedor hipotecario acepte la distribución, es evidente, pues los acreedores son personas indeterminadas y desconocidas. Es este un caso de excepción al Art. 164 del Reglamento pues la distribución se hace unilateralmente por el deudor hipotecario, sin mediar convenio entre las partes ni mandato judicial. Aparte de ello, al ponerse en circulación las obligaciones hay una aceptación tácita de la hipoteca. Alfonso de Cossio y Corral, *Lecciones de Derecho Hipotecario*, pág. 217.

Consideramos que dentro de la misma excepción están las hipotecas para garantizar títulos a la orden. Si bien en estas hipotecas la indeterminación del titular es relativa porque por lo menos en la obligación figura el nombre del primer acreedor, la trasmisión del título se efectúa mediante un simple endoso sin necesidad de dar conocimiento de ello al deudor ni hacer constar la transferencia en el Registro. El derecho hipotecario en tal caso se entiende transferido con la obligación o con el título. Art. 153 de la Ley (30 L.P.R.A. sec. 266); *Colberg* v. *Banco Territorial y Agrícola*, 12 D.P.R. 321 (1907). Puede resultar en muchos casos que a la fecha de

presentación en el Registro de la hipoteca garantizando una obligación endosable ésta haya sido transferida, mediante endoso, a un segundo acreedor desconocido para el Registro y aun para el deudor. En ese caso, ¿cómo podría haber convenio entre las partes para la determinación previa de la cantidad de que cada finca deba responder, según lo exige el Art. 164 del Reglamento Hipotecario?

Por otro lado, nos parece inaplicable el citado Art. 164 del Reglamento al presente caso pues aquí el contrato de préstamo fue celebrado entre una corporación y el señor Calimano mientras que la hipoteca en garantía de la obligación otorgada por la corporación deudora, fue constituida unilateralmente por terceras personas, siendo éstas la única parte en la constitución del gravamen que los comentaristas llaman "hipoteca de seguridad". No hay pues *partes* que puedan convenir sobre la distribución de responsabilidad. La ley ni siquiera exige que esta hipoteca voluntaria sea aceptada por el acreedor hipotecario. Art. 141 de la Ley. En verdad, según afirma Roca Sastre, ([1]) "la indeterminación de la persona del titular en esta clase de títulos, unida a la incorporación de la obligación garantida al título, imposibilita la aplicación normal de las reglas comunes relativas a la constitución y régimen de las hipotecas".

Convenimos finalmente con dicho comentarista en que los procedimientos de distribución, el convencional y el judicial, tienen sólo aplicación en casos normales y que por excepción, en las hipotecas constituidas en garantía de títulos al portador, y también las otorgadas por la sola disposición del dueño, la distribución se hace unilateralmente, o sea, por el hipotecante solo.

Por las razones expuestas la escritura de hipoteca debió inscribirse sin el defecto subsanable señalado por el Registrador.

---

([1]) IV Roca Sastre, *Derecho Hipotecario*, págs. 528 y 529.

■ ¿Prohibe la ley que el deudor hipotecario convenga en que la hipoteca se extienda a las fincas que se agrupen a la hipotecada? El Registrador sostiene: "Preceptos como el 110 y el 111 de la L.H. son de naturaleza prohibitiva en beneficio del deudor y del crédito territorial. Sus disposiciones son irrenunciables y contra ellas no cabe pacto que modifique o altere sus mandatos, son contrario a la ley y en ese sentido la libertad de contratación se anula."

"La hipoteca se extiende—reza el artículo 110—a las accesiones naturales, a las mejoras, a los frutos pendientes y rentas no percibidas al vencer la obligación, y al importe de las indemnizaciones concedidas o debidas al propietario por los aseguradores de los bienes hipotecados o en virtud de expropiación por causa de utilidad pública." Y el Art. 111 en lo pertinente dispone:

"Conforme a lo dispuesto en la sección anterior, se entenderán hipotecadas juntamente con la finca, aunque no se mencionen en el contrato, siempre que correspondan al propietario:

"1. . . .

"2. Las mejoras que consistan en nuevas plantaciones, obras de riego o desagüe, obras de reparación, seguridad, transformación, comodidad, adorno o elevación de los edificios, y *cualesquiera otras semejantes que no consistan en agregación de terrenos, excepto por accesión natural,* o en nueva construcción de edificios donde antes no los hubiere." (Subrayado nuestro.)

De acuerdo con los citados preceptos la hipoteca se extiende a la accesión natural pero no a las agregaciones de terreno en virtud de agrupación. Esta extensión a la accesión natural y las demás mejoras que se especifican en los dos citados artículos de la Ley Hipotecaria, opera automáticamente aunque no se mencionen en el contrato. Es decir, constituida una hipoteca sobre una finca, tanto responde ésta del crédito hipotecario como las indicadas mejoras ya que por disposición de ley estas mejoras se entienden hipotecadas conjuntamente con la finca.

Si la finca hipotecada recibe un incremento mediante la acción de la naturaleza (accesión), esa agregación queda afecta al gravamen hipotecario pero si el incremento consiste en la agregación de terrenos mediante agrupación de fincas pertenecientes al hipotecante o adquiridas luego por éste mediante cualquier título legal, la ley no considera que estas agrupaciones o agregaciones, se entienden hipotecadas conjuntamente con la finca y no las hace extensiva a ellas. Como dice Barrachina, (²) no es de presumir que fuera la voluntad del deudor gravar estas fincas o los terrenos que se agrupan, "y como al hipotecario le bastó la que se le dió en garantía en el contrato, no puede pretender en razón y justicia, que la responsabilidad se extienda a la nuevamente adquirida por aquel hipotecante. He aquí el eje de la presunción movida por la fuerza de la Justicia". La misma razón de justicia es aplicable a las fincas o porciones de terreno que aunque ya pertenecían al hipotecante, no se habían agregado a la finca hipotecada a la fecha del contrato. Pero ni los Arts. 110 y 111 de la Ley Hipotecaria, ni ningún otro precepto legal que conozcamos, prohiben al deudor convenir libremente en que la hipoteca se extienda a la agregaciones de terreno, que no sean por accesión natural. A ello no se oponen los Arts. 106, 107 y 108 de la Ley (30 L.P.R.A. secs. 202, 203 y 204), el primero de los cuales declara los bienes que pueden ser hipotecados, el segundo, los bienes que pueden hipotecarse con restricciones y el tercero, los que no pueden hipotecarse. Entre los bienes que no pueden hipotecarse se comprende, en el inciso 5 del Art. 108, el derecho real en cosas que, aun cuando se deban poseer en lo futuro, no estén aún inscritos a favor del que tenga el derecho a poseer. El Registrador recurrido invoca esta disposición en apoyo de su nota, pero no cabe aquí su aplicación puesto que el deudor hipotecario no ha pretendido hipotecar *un derecho real sobre* las agregaciones sino que

---

(²) 3 Barrachina, *Derecho Hipotecario y Notarial*, pág. 74.

ha consentido en que la hipoteca se extienda a estas agrega-
ciones en sí, aunque no sean por accesión natural.

No siendo contraria a la ley la cláusula hipotecaria que
hace extensiva la hipoteca a los terrenos que por agrupación
se agreguen a la finca hipotecada, el Registrador debió pro-
ceder a su inscripción.

*Se dictará resolución revocando las notas recurridas.*